[Civ. No. 15029.   Second Dist., Div. Three.   May 10, 1946.]

M. D. HALL, Appellant, v. HUBERT B. SCUDDER, as Real Estate Commissioner, etc., Respondent.

McLaughlin, McGinley & Hanson for Appellant.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

SHINN, J.—Petition by M. D. Hall for a writ of mandate, requiring the Real Estate Commissioner to renew petitioner's license as a real estate broker. The trial court sustained the commissioner's general demurrer without leave to amend, entered judgment dismissing the proceeding, and petitioner appeals.

The petition alleged the following facts: That petitioner has been for many years a licensed real estate broker; that prior to the expiration of his annual license, June 30, 1943, he filed an application for renewal thereof and paid the statutory fee; that on August 6, 1943, the commissioner, without acting on the application, issued an order requiring petitioner to show cause why his application for renewal should not be denied for the reason, as stated, that in the month of July, 1938, petitioner had overreached one Joan H. Woodbury in the sale to her of two lots and thereby made a secret profit of $300 on one lot and $250 on the other; that petitioner filed an answer to the order to show cause, denying the allegations of the same, and alleging that the lots had been held by him under options and had been sold without any misrepresentation; that a hearing was had on December 7, 1943, following which the commissioner made findings and an order as follows: ". . . The commissioner finds from the evidence that applicant does not meet the requirements as to truthfulness and honesty, as set forth in the Real Estate Law, Section 10152, Division 4, Business and Professions Code, State of

California, and does not satisfy him thereon, and therefore makes the following Order: '*ORDER.* WHERE, IT IS ORDERED, that the application of M. D. Hall for Real Estate Broker license for the year 1943-44 be and the same is hereby *DENIED.*' '' It was alleged that petitioner made application in due form for renewal of license for the year 1944-45; that on August 28, 1944, upon petitioner's application, the commissioner made an order reopening the case for the purpose of taking additional testimony with reference to a renewal of the license, and set the matter for hearing on September 13, 1944; that plaintiff appeared at the hearing and introduced evidence which had not been presented to the commissioner on the original hearing, which evidence petitioner claimed to have been newly discovered and which, if true, would have established that said Joan H. Woodbury had given false testimony in the first hearing upon the one material issue involved, which was decided against petitioner and caused the commissioner to refuse a renewal of petitioner's license. It was alleged that since the last hearing the commissioner has taken no additional action in the matter of petitioner's application. There was filed with the petition in the superior court, and made a part thereof, a transcript of the evidence given at the last hearing before the commissioner. The allegations of the petition brought in question the sufficiency of the evidence to support the finding that the petitioner had been guilty of dishonesty, and it also alleged facts which, if true, would have established that the commissioner at the first hearing had been deceived by false testimony given by said Joan H. Woodbury.

The record does not disclose the ground upon which the general demurrer was sustained. The respondent urges several grounds of support for the judgment: (1) the evidence is sufficient to sustain the findings and decision of the Real Estate Commissioner; (2) this proceeding was moot at the time it was filed in the superior court, for the reason that the license which was denied would have expired by lapse of time; (3) this proceeding was not seasonably filed, and (4) that appellant has not exhausted his administrative remedies. We shall have occasion to refer but briefly to these several contentions of respondent.

Petitioner has maintained throughout that the proceeding instituted by the commissioner which resulted in a denial of

his application for renewal, and the order itself, were unauthorized by the Real Estate Act, which has been carried into the Business and Professions Code. The briefs contain a full discussion of the point. From a study of the code sections we have concluded that the proceeding was unauthorized and in excess of the commissioner's jurisdiction.

It is scarcely necessary to say that the powers of the commissioner to deprive a licensee of the further right to do business are no broader than those which are vested in him by law, expressly, or by necessary implication.

An applicant for a license must submit certain proof that he is honest, truthful, and of good reputation (Bus. & Prof. Code, § 10150); the commissioner may require further proof and conduct a hearing under the code procedure for that purpose (§ 10152), and he must give the applicant a written examination along certain lines (§ 10153). The matter of suspension or revocation of a license is covered by sections 10175 to 10180. The commissioner may, upon his own motion and shall, upon the verified complaint in writing of any person, investigate the actions of a licensee by means of a hearing, this procedure being set out in sections 10100 to 10116. Upon proof of guilt of acts and conduct specifically described in sections 10176 and 10177, the commissioner may suspend or revoke a license. There is, however, a limitation upon this power; it is only conduct "within the immediately preceding three years" which furnishes a cause for revocation or suspension. Although the order was only a refusal to renew the license, it was for all practical purposes a revocation of the license, and it deprived petitioner of his right to pursue a lawful occupation.

None of the procedure which is applicable to the matter of original applications, and none of that which must be followed before there can be an order of suspension or revocation is expressly, or at all, made applicable to proceedings for renewal of licenses. The scheme of the act in this respect is orderly and logical. The three matters of issuance of an original license, renewal of existing licenses, and suspension or revocation are distinct and separate. The procedure for each is complete and adequate. The qualifications of the applicant must be proved in order to obtain an original license. Unless otherwise provided, all licenses expire June 30 of each year at midnight (§ 10200). If the licensee fails to apply for

a renewal prior to the date of expiration, or within one year thereafter, no license shall be issued to him except upon another original application. A renewal applied for within such yearly period carries a double fee. The licensee is privileged to continue in business until his license is either suspended or revoked, and the matter of renewal is an administrative procedure common in licensing systems. No duty rests upon an applicant for renewal to make the proof required in connection with an original application, and the code makes no provision for the commissioner to initiate or conduct an inquiry as to the fitness of the applicant, as he may do upon an original application. There is nothing in the law which suggests an intention on the part of the Legislature to tie in the matter of renewals with the formalities of original applications or with the procedure for disciplinary action.

To summarize: the commissioner, before issuing an original license, must examine the applicant with respect to his ability to properly perform his duties. He must satisfy himself as to the applicant's good character, and for this purpose may go as far as he wishes into the antecedents of the applicant. Once *the* license is issued, the licensee becomes subject to disciplinary procedure as to his acts and conduct committed while he is a real estate licensee and "within the immediately preceding three years." The proceeding here involved intermingles three separate procedures. It attempts to revive the jurisdiction of the commissioner which he has in considering an original application and which is exhausted when he issues the original license (except in cases of fraud in obtaining the license and for other acts not here involved. § 10177). It also in effect revokes a license for alleged acts which would not be a ground for revocation because they were not committed within three years immediately preceding the institution of the instant proceeding. The confused result is that petitioner has not been found guilty of any act which would justify a cancellation of his original license for fraud in its procurement, or any other reason, and has not been found guilty of any act within three years immediately preceding the laying of the charge which would justify a revocation of the license.

In the memorandum of points and authorities filed with the petition for the writ in the superior court, it is stated that Mrs. Woodbury had previously made a complaint to the commis-

sioner; that he considered evidence, oral and documentary, produced by him at that time, and on September 30, 1942, sent a letter to Mr. Hall reading as follows: ''After giving careful consideration to the statements made at the conference, together with the correspondence on file, we are of the opinion that the evidence is not sufficient to warrant the case being set for formal hearing to determine whether or not defendant's license should be revoked. Yours very truly, Clarence Urban, Commissioner By Perry N. Johnson, Deputy.'' While this statement by defendant's counsel is not pertinent to the ground of our decision, it does emphasize the necessity that all action taken by the commissioner in disciplinary matters be kept strictly within the powers vested in him. Petitioner had been regularly granted annual renewals of his license from 1938 to 1943 and Mrs. Woodbury's complaint was not presented to the commissioner until after the expiration of the time within which he was empowered to act on it.

■ The proper construction of the several code sections is that the renewal of a real estate broker's license is a matter of right on the part of one who holds an unsuspended and unrevoked license which is in force at the time of the application for renewal.

There is a discussion in the briefs of the sufficiency of the evidence to support the finding which the commissioner made at the first hearing, to the effect that petitioner had been guilty of dishonest acts. For reasons heretofore stated, there is no occasion to discuss this matter.

■ The question as to petitioner's rights was not and is not moot. Under a proper interpretation of the law, petitioner had a right to a renewal of his license which expired in 1943 and for each succeeding year. He is now without a license, although he is entitled to one. The right which he asserts here is one that did not expire at the end of the year for which his license was first denied. The holder of an unsuspended and unrevoked license occupies a status which entitles him to annual renewals, and for that reason it is important to petitioner that that status be maintained. The order of the commissioner and also the judgment of the trial court denied him that status. We think it should be restored to him. The question is also one of interest to the public and to the commissioner. A final decision upon review would be difficult to obtain within a year following the denial of a license renewal.

It is argued by respondent that petitioner delayed for an unreasonable time in seeking a review by the courts. The petition was filed February 15, 1945. At the time petitioner was refused a license he was not represented by an attorney. Shortly after the order was made on December 7, 1943, he obtained counsel. A transcript of the proceedings at the first hearing was then obtained and the services of an examiner of questioned documents were engaged. Mrs. Woodbury had testified in the hearing that she gave petitioner a check for $50 as a deposit on one of the lots and that there was then written thereon, "Deposit on Lots 7 and 8, Tract 6600, lowest price direct from owners." This notation was corroborative of her testimony that she considered petitioner to be acting as her agent and understood she was buying the property at the lowest price the owners were willing to accept. The order to show cause read in part as follows: "That during the month of July, 1938, you represented to Joan H. Woodbury that you would secure Lots 7 and 8 in Tract 6600, Los Angeles County, California, for her at the lowest possible price; that believing said representations to be true, the said Joan H. Woodbury gave you a check for $50.00 as a deposit on said transaction with the notation, 'Deposit on Lots 7 and 8, Tract 6600, lowest price direct from present owners'; that said Joan H. Woodbury would not have paid said $50.00 deposit on said transaction but for the said representation; that said representation was false and known to be false by you and was made for the purpose of inducing Joan H. Woodbury to enter into this transaction; that by means of double escrows and the use of dummies you made a secret profit of $300.00 on Lot 7 and a secret profit of $200.00 on Lot 8." Petitioner contended at all times that he held options on the lots and dealt with them as the owner, and not as agent for Mrs. Woodbury, and he testified that he made none of the representations testified to by her. Whether he held options, or only authority to find a buyer at a net price to the owner, as respondent contends, is immaterial in this connection. The report of the examiner of questioned documents was to the effect that the notation on the check was written with a different pen and with different ink from those used in the remainder of the document, and had been placed on the check by Mrs. Woodbury after it had been cashed by the bank. In the meantime, Mrs. Woodbury had obtained judgment against petitioner in

the municipal court for $481.51, which he paid, and on March 2, 1944, she addressed to the commissioner a letter stating that petitioner had paid the judgment and that she had no objection to the commissioner's giving favorable consideration to petitioner's application. In August, 1944, as previously stated, petitioner filed with the commissioner a petition for rehearing and reconsideration and also filed his application for a renewal for the year 1944-45, tendering the double fee required therefor. He urged that the original order was void and should be vacated by the commissioner. The matter was reopened, as above stated, a hearing was had September 13, 1944, and no further order has been made by the commissioner. The fact that petitioner paid the judgment and that Mrs. Woodbury wrote a letter to the commissioner, acknowledging payment, does not appear in the record; it is stated in appellant's brief and is mentioned as an incidental fact, although it has little, if any, bearing on the question involved. That question is whether there has been such unreasonable delay as to justify dismissal of the instant proceeding. We are persuaded that the learned trial judge would not have sustained a demurrer on the ground that this proceeding was not timely brought, without giving petitioner opportunity to amend, and we believe that relief should not be denied for that reason. The order in question was void and when the commissioner ordered a rehearing and reconsideration, he evidently was of the opinion that it could and perhaps should be vacated. The law as it stood at that time did not provide for a rehearing, although it has now been changed. (Govt. Code, § 11521, added by Stats. 1945, chap. 867, § 1.) There was no such delay in applying for a reopening of the case as to indicate an acquiescence in the order on the part of petitioner. The matter was in the hands of his attorneys and there was nothing to indicate that they did not act diligently in making an investigation of facts which they believed would justify the commissioner in setting aside his order. The delay between the date of the second hearing and the institution of this proceeding was due, no doubt, to the failure of the commissioner to make any ruling after he had heard the evidence with reference to the alleged alteration of the check. Certainly no prejudice has resulted to anyone by reason of the delay.

It is argued by the respondent that petitioner, in-

stead of proceeding as he has done, should have filed a new application for a license. We do not believe he was obliged to do this, for in so doing he would have waived substantial rights. He has the status of the holder of an unsuspended and unrevoked license and is entitled to renewals thereof as long as he retains that status. He was not obliged to subject himself to the possible hazard of a denial of an application for a new license upon the ground that he had been guilty of conduct which would not have warranted an order of suspension or revocation, for the reason that no disciplinary proceeding was instituted within the limited period of three years.

Section 10105, Business and Professions Code, reads: "The decision of the commissioner in denying, suspending or revoking any license is subject to judicial review in accordance with law." Counsel have divergent views as to what evidence would be admissible upon a trial of the proceeding. There will be no need for a trial unless the commissioner wishes to controvert the allegations of the petition with respect to the facts we have stated and which furnish the basis of our decision. If the facts alleged are admitted, a peremptory writ of mandate should issue as prayed for.

The judgment is reversed, with directions to overrule the demurrer to the petition and allow respondent to file an answer if he be so advised.

Desmond, P. J., and Wood, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 8, 1946. Edmonds, J., voted for a hearing.