[No. 75623-6. En Banc.]
Argued May 17, 2005. Decided September 22, 2005.

ASSOCIATION OF WASHINGTON BUSINESS, *Petitioner*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

432

*Franklin G. Dinces* and *Geoffrey P. Knudsen*, for petitioner.

*Robert M. McKenna, Attorney General, Jeffrey D. Goltz, Deputy, Donald F. Cofer, Senior Counsel,* and *Maureen A. Hart, Senior Assistant*, for respondent.

¶1 SANDERS, J. — The Association of Washington Business (AWB) seeks reversal of a published Court of Appeals opinion holding the Department of Revenue (DOR) has the inherent authority to issue nonbinding interpretive rules. We hold DOR has that authority, and we define the purpose and scope of interpretive rules.

## FACTS AND PROCEDURAL HISTORY

¶2 In April 2001 AWB filed a lawsuit in Thurston County Superior Court challenging three DOR regulations published in the Washington Administrative Code (WAC). AWB alleged the regulations[1] were invalid because DOR did not have the statutory authority to adopt them. Specifically, AWB alleged the regulatory reform act of 1995 revoked DOR's rule making authority under RCW 82.01.060 and that RCW 82.32.300 did not authorize interpretive rules. RCW 82.32.300 is the cited statutory authority for the WACs at issue. AWB prayed for a declaratory judgment that RCW 82.32.300 does not grant DOR the authority to issue the three WACs and that the WACs are invalid, and it sought an injunction to prevent DOR from adopting any other interpretive rules under that statute.

¶3 DOR admitted the three rules are interpretive as defined by RCW 34.05.328(5)(c)(ii).[2] It admitted adopting or amending the three rules after the effective date of the

---

[1] The three WACs are: (1) WAC 458-20-238 (sale of watercraft to nonresidents), (2) WAC 458-20-136 (manufacturing, processing for hire, fabricating), and (3) WAC 458-20-13601 (sales and use exemption for machinery and equipment).

[2] RCW 34.05.328(5)(c)(ii) provides: "An 'interpretive rule' is a rule, the violation of which does not subject a person to a penalty or sanction, that sets forth the agency's interpretation of statutory provisions it administers."

regulatory reform act of 1995 (July 23, 1995) and that RCW 82.32.300 is the only statutory authority cited for the rules but denied it is the *only* statutory authority. The other primary statutes DOR claims support its authority are RCW 82.01.060 and RCW 82.32A.010.

¶4 The superior court held a hearing in 2002 at which AWB presented testimony that the public was misled by DOR into believing the rules were binding rather than merely interpretive. Two officers of AWB, Thomas Dooley and Michael Bernard, testified of their belief, induced by DOR, the three WACs had the force and effect of law. Bernard in particular said he would have challenged the rules in department appeals processes and claimed larger exemptions had he known the rules were nonbinding.

¶5 The court issued an oral ruling. The court clarified that it was not ruling on the question of whether the rules accurately reflected the underlying statutes. The court ruled that DOR had the authority to issue rules under RCW 82-.32.300, but not nonbinding interpretive rules. The court determined the rules impaired the rights of AWB since the rules were nonbinding but were still called "rules" and found the rules misleading because other avenues existed to inform the public of the department's interpretation of statutes.

¶6 The court made the following findings of fact:

1. The Association of Washington Business contested the Department of Revenue's authority to adopt three rules, WAC 458-20-136, WAC 458-20-13601 and WAC 458-20-238, "the Rules".

2. The Department of Revenue argues to the Court that the Rules do not and are not intended to have the force of law because the Department believed the rules are interpretive rules.

3. The Rules are for nonbinding informational purposes only. The Rules do not have the force of law.

4. The public has been misled by prelitigation, Department of Revenue actions to believe that the Rules have the force of law.

5. The Plaintiff, and its members, have been substantially prejudiced by the adoption of the Rules and the Department of Revenue's prelitigation actions.

6. The Rules and their applications improperly interfere with and/or impair the legal rights of Plaintiff and its members.

7. Plaintiff has proved that it and its members have standing to challenge the Department of Revenue's authority to adopt the Rules.

Clerk's Papers (CP) at 80. The court also entered the following conclusions of law:

1. This Court has jurisdiction over the Parties and the claims decided herein under RCW 34.05.514 and RCW 34.05.570(2). In the alternative, this Court would have jurisdiction to decide this matter under RCW 34.05.514 and RCW 34.05.570(4) or The Declaratory Judgments Act, RCW 7.24.

2. Paragraph two of RCW 82.32.300 provides certain authority to the Department of Revenue to adopt rules having the force of statutory law.

3. RCW 82.32.300 does not provide authority to adopt rules that are for nonbinding informational purposes that lack the force of law.

4. The Department of Revenue lacks authority to adopt rules that are for nonbinding informational purposes if the rules do not expressly inform the public of their nonbinding nature and purpose.

5. The Court expresses no opinion whether the Department of Revenue has the authority to adopt rules that are for nonbinding informational purposes if the rules do expressly inform the public of their nature and purpose.

6. The Department of Revenue lacks the authority to lead the public to believe that a nonbinding informational rule has the force of law.

7. Any finding of fact that is more properly characterized as a conclusion of law shall be considered to be included herein.

8. The Court hereby incorporates its oral ruling of October 3, 2002.

CP at 80-81. The court entered judgment in favor of AWB and declared the three rules invalid. DOR appealed.

¶7 The Court of Appeals reversed in a published opinion. *Ass'n of Wash. Bus. v. Dep't of Revenue*, 121 Wn. App. 766, 90 P.3d 1128 (2004). The court held DOR has the inherent authority to adopt interpretive rules and that interpretive rules do not need to state they are interpretive. *Id.* at 772, 775. The court refused to opine on DOR's misrepresentations of the rules as binding, saying that interpretive rules are binding on the public. *Id.* at 774-75. Further, even if the rules were misrepresented as law, that is not a sufficient reason to invalidate the rules under the statute. *Id.* at 775-76.

¶8 AWB petitioned this court for review, which we granted.

## STANDARD OF REVIEW

¶9 The party challenging a rule has the burden to prove it is invalid. RCW 34.05.570(1)(a); *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003). "This court may declare an agency rule invalid if it: (1) violates constitutional provisions, (2) exceeds statutory authority of the agency, (3) was adopted without compliance to statutory rule-making procedures, or (4) is arbitrary and capricious." *Wash. Pub. Ports Ass'n* at 645 (citing RCW 34-.05.570(2)(c)). "Determining the extent of DOR's rule-making authority is a question of law" which is reviewed de novo. *Id.* AWB only alleges the rules exceed DOR's statutory authority.

## ANALYSIS

I. DOR Has the Authority to Adopt Interpretive Regulations

¶10 "Administrative agencies have those powers expressly granted to them and those necessarily implied from their statutory delegation of authority." *Tuerk v. Dep't of Licensing*, 123 Wn.2d 120, 124-25, 864 P.2d 1382 (1994) (citing *Mun. of Metro. Seattle v. Pub. Employment*

*Relations Comm'n*, 118 Wn.2d 621, 633, 826 P.2d 158 (1992)).[3] DOR argues it has both express and implied authority to adopt interpretive rules, citing various statutes to support its position.

### A. RCW 82.32.300 and Its Proper Interpretation

¶11 The first statute is RCW 82.32.300, which reads in relevant part:

> The administration of this and chapters 82.04 through 82.27 RCW of this title is vested in the department of revenue which shall prescribe forms and *rules of procedure* for the determination of the taxable status of any person, for the making of returns and for the ascertainment, assessment and collection of taxes and penalties imposed thereunder.
>
> The department of revenue shall make and publish *rules and regulations*, not inconsistent therewith, *necessary to enforce* provisions of this chapter and chapters 82.02 through 82.23B and 82.27 RCW, . . . *which shall have the same force and effect as if specifically included therein*, unless declared invalid by the judgment of a court of record not appealed from.

(Emphasis added.) The first paragraph clearly grants DOR the authority to adopt rules of procedure, which are not at issue here. The second paragraph refers to legislative rules.[4] Legislative rules must be consistent with the stat-

---

[3] *Tuerk* also lists general rules on agency authority that are helpful:

Agencies have implied authority to carry out their legislatively mandated purposes. When a power is granted to an agency, "everything lawful and necessary to the effectual execution of the power" is also granted by implication of law. Likewise, implied authority is found where an agency is charged with a specific duty, but the means of accomplishing that duty are not set forth by the Legislature. Agencies also have implied authority to determine specific factors necessary to meet a legislatively mandated general standard.

123 Wn.2d at 125 (citations omitted) (quoting *State ex rel. Puget Sound Navigation Co. v. Dep't of Transp.*, 33 Wn.2d 448, 481, 206 P.2d 456 (1949)).

[4] The Administrative Procedure Act (APA) defines the terms "procedural rule," "interpretive rule," and "significant legislative rule," requiring certain additional measures be taken when adopting the last category of rules. RCW 34.05.328(1), (5). The statutory definitions are:

For purposes of this subsection:

(i) A "procedural rule" is a rule that adopts, amends, or repeals (A) any procedure, practice, or requirement relating to any agency hearings; (B) any

utes DOR is charged with administering and have the "same force and effect" as the statutes themselves. Such rules clearly cannot be merely interpretive, which by definition means nonbinding in the sense that violating the rule does *not* result in sanctions. *See* RCW 34.05 .328(5)(c)(ii). Thus, RCW 82.32.300 *expressly* authorizes rules of procedure and legislative rules.[5]

¶12 DOR argues interpretive rule making authority is implied from the vesting of the tax code's administration and enforcement in DOR. As the enforcer of the revenue statutes, DOR of necessity makes interpretive decisions about those statutes. *See United States v. Mead Corp.*, 533 U.S. 218, 227, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) ("[W]hether or not they enjoy any express delegation of authority on a particular question, agencies charged with applying a statute necessarily make all sorts of interpretive choices . . . ."). It was our holding that "[a]n agency charged with the administration and enforcement of a statute may interpret ambiguities within the statutory language through the rule making process." *Edelman v. State ex rel. Pub. Disclosure Comm'n*, 152 Wn.2d 584, 590, 99 P.3d 386 (2004).

---

filing or related process requirement for making application to an agency for a license or permit; or (C) any policy statement pertaining to the consistent internal operations of an agency.

(ii) An "interpretive rule" is a rule, the violation of which does not subject a person to a penalty or sanction, that sets forth the agency's interpretation of statutory provisions it administers.

(iii) A "significant legislative rule" is a rule other than a procedural or interpretive rule that (A) adopts substantive provisions of law pursuant to delegated legislative authority, the violation of which subjects a violator of such rule to a penalty or sanction; (B) establishes, alters, or revokes any qualification or standard for the issuance, suspension, or revocation of a license or permit; or (C) adopts a new, or makes significant amendments to, a policy or regulatory program.

RCW 34.05.328(5)(c). Again, it is important to note these definitions are given in the context of specific requirements for legislative rules as opposed to the other two kinds.

[5] AWB also argues the second paragraph of RCW 82.32.300 only authorizes rules necessary to enforce the tax laws. It further postulates the interpretive rules are never necessary to enforce the laws, and thus that statute does not authorize such rules. In light of the above conclusion, we need not consider this argument.

¶13 DOR is charged with enforcing the tax code[6] and hence has the authority to interpret it. Interpreting statutes is consistent with administering and enforcing the statutes. As one treatise says, "Legislative authorization for an agency to interpret the law under which the agency operates and to make known to the public its interpretation of that law is normally implied from the powers expressly granted to the agency by the legislature. Every legislature wants agencies to determine the meaning of the law they must enforce and to inform the public of their interpretations so that members of the public may follow the law." ARTHUR EARL BONFIELD, STATE ADMINISTRATIVE RULE MAKING § 6.9.1, at 280 (1986) (footnote omitted).[7] Interpreting a statute, however, is not necessarily the same as adopting an interpretive rule.

¶14 DOR also argues the authority to adopt legislative rules implies the lesser authority to adopt interpretive rules. DOR cites *Tuerk* to support its position. In *Tuerk*, we noted the Department of Licensing was "charged with governing the activities of real estate brokers through the issuance and enforcement of rules and regulations." 123 Wn.2d at 125. We then stated that the power to interpret regulations is implied from the authority to enforce them. *Id.* at 126 ("Within other relevant statutory constraints, the power to enforce a *regulation* implies the concomitant authority to interpret that *regulation*." (emphasis added)). However, we there spoke of interpreting *regulations*, not statutes, which is the subject of the current inquiry, and so this case is of little help in deciding whether DOR has the

---

[6] RCW 82.32.300 ("The administration of this and chapters 82.04 through 82.27 RCW of this title is vested in the department of revenue . . . ."); RCW 82.01.060(1) ("The director of revenue . . . shall: (1) Assess and collect all taxes and administer all programs relating to taxes . . . .").

[7] The treatise also notes an interpretive "rule" that merely restates the statute's plain meaning is not a rule, but only a statement. BONFIELD, *supra*, § 6.9.1, at 129-30 (Supp. 1993). This is consistent with our statement in *Edelman* that agencies may interpret ambiguous statutes with rules. *See* 152 Wn.2d at 590. While the treatise cites to case law from another state, we are charged to interpret our APA consistently with other states. *See* RCW 34.05.001.

authority to adopt regulations interpreting statutes rather than merely the authority to interpret its own regulations.[8]

¶15 AWB notes two decisions stating RCW 82.32.300 authorizes only procedural rules. *See Coast Pac. Trading Co. v. Dep't of Revenue*, 105 Wn.2d 912, 719 P.2d 541 (1986); *Fid. Title Co. v. Dep't of Revenue*, 49 Wn. App. 662, 745 P.2d 530 (1987). In *Coast Pacific*, we stated "[t]he Legislature has allocated to the Department the authority only to establish procedural rules." 105 Wn.2d at 917. We cited RCW 82.32.300 for support but only the first paragraph of it. We did not discuss the second paragraph of RCW 82-.32.300 and its separate grant of rule making authority. Also, in *Coast Pacific* we disallowed an export exemption from the state business and occupation tax because it was based on a regulation that attempted to expand tax immunity beyond what the underlying statute and constitution required. 105 Wn.2d at 917.[9] Our concern was an agency rule that amended a statute, not one that interpreted it. The statement about rule making authority in RCW 82.32.300 limited to procedural rules is accurate only if limited to the first paragraph of the statute. The second paragraph clearly grants DOR the authority to adopt legislative rules that are consistent with the statutory scheme.[10]

¶16 Likewise, in *Fidelity Title* the court made only a passing reference to RCW 82.32.300 and cited *Coast Pacific*

---

[8] DOR also cites *State v. Crown Zellerbach Corp.*, 92 Wn.2d 894, 602 P.2d 1172 (1979), in which we held the power to disapprove a permit application implies the power to approve with conditions. That may be true, but it does not illuminate how the power to enact legislative rules implies the power to adopt interpretive rules.

[9] DOR had abandoned relying on the rule during litigation because it was based on United States Supreme Court precedent that the Court had modified since the rule issued. The rule was thus inconsistent with the updated analysis on the constitutionality of import/export taxation. *See Coast Pac.*, 105 Wn.2d at 916-17.

[10] DOR also argues the statute's legislative history precludes the narrow interpretation offered by AWB. The language of the statute is clear enough that resort to legislative history is unnecessary. *See, e.g., Greenen v. Bd. of Accountancy*, 126 Wn. App. 824, 839, 110 P.3d 224 (2005) ("It is not appropriate to resort to aids of construction, such as legislative history, until we have examined the plain meaning and found the statute ambiguous or susceptible to more than one reasonable meaning.").

for the proposition that DOR has the authority to adopt only procedural rules. 49 Wn. App. at 666. This issue was not before the court, however; the real issue was how the legislature intended to classify Fidelity Title for business and occupation tax purposes. The answer to that question depended on statutory analysis, not DOR's rule making authority.[11] Again, the court was concerned with WACs that attempted to amend statutes, not interpret them.

¶17 Neither of these two cases discusses RCW 82.32.300 at length, barely even mentioning it to make a point only tangentially related to the case at hand. Further, they do not analyze the second paragraph of the statute, which grants additional rule making authority to DOR. In short, these two cases are properly confined to the grant of procedural rule making authority in the first paragraph of RCW 82.32.300, and as such are of little help in this case, especially since they do not discuss the vesting of the tax code's administration and enforcement in DOR, which is the claimed source of DOR's interpretive rule making authority.

B. Other Statutes Support DOR's Interpretive Rule Making Authority

¶18 While RCW 82.32.300 alone may be insufficient to support DOR's interpretive rule making authority, other statutes do support it. One such statute is RCW 34-.05.230(1), which grants agencies the authority to adopt interpretive statements, which are advisory only.[12] The

---

[11] DOR also argues the language in these opinions relating to RCW 82.32.300 is dicta since it was not an issue before the courts. This interpretation is plausible since the statements were made in passing and not directly related to the holdings in either case. If so the language is not binding on this court. *See, e.g., State v. Potter*, 68 Wn. App. 134, 149 n.7, 842 P.2d 481 (1992) ("Statements in a case that do not relate to an issue before the court and are unnecessary to decide the case constitute obiter dictum, and need not be followed.") (citing *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984)). Even if the language is not dicta, it is questionable in light of the statute's plain meaning.

[12] RCW 34.05.230 reads in relevant part:

(1) An agency is encouraged to advise the public of its current opinions, approaches, and likely courses of action by means of interpretive or policy

statute then says, "To better inform and involve the public, an agency is encouraged to convert long-standing interpretive and policy statements into rules." *Id.* Further, the statute allows a person to petition the agency to turn interpretive statements into rules. RCW 34.05.230(2). Clearly, the legislature intended agencies to adopt interpretive rules or they simply could not comply with this statute.

¶19 RCW 42.17.250 corroborates this view.[13] This statute requires agencies to publish in the WAC, among other items, "[s]ubstantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." RCW 42.17.250(1)(d). Only rules adopted through the rule making procedure can be published in the WAC. *See* RCW 34.05.210, .345, .390. Abstracts of interpretive statements are published in the Washington State Register with contact information to guide an interested person to the agency for a copy. RCW 34-.05.230(4). Again, interpretive statements cannot be published in the WAC without first surviving the rule making process, implying authority to make such rules.

---

statements. Current interpretive and policy statements are advisory only. To better inform and involve the public, an agency is encouraged to convert long-standing interpretive and policy statements into rules.

(2) A person may petition an agency requesting the conversion of interpretive and policy statements into rules. Upon submission, the agency shall notify the joint administrative rules review committee of the petition. Within sixty days after submission of a petition, the agency shall either deny the petition in writing, stating its reasons for the denial, or initiate rule-making proceedings in accordance with this chapter.

[13] RCW 42.17.250(1) reads in relevant part:

(1) Each state agency shall separately state and currently publish in the Washington Administrative Code and each local agency shall prominently display and make available for inspection and copying at the central office of such local agency, for guidance of the public:

. . . .

(c) Rules of procedure;

(d) Substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(e) Each amendment or revision to, or repeal of any of the foregoing.

■ ¶20 DOR also argues it has express statutory authority to adopt interpretive rules. It first points to RCW 82-.32A.010, which grants DOR administrative duties over the chapter and the power to adopt rules "as may be necessary to fully implement this chapter and the rights established under this chapter." Further, taxpayers have a "right to receive, upon request, clear and current tax instructions, rules, procedures, forms, and other tax information." RCW 82.32A.020(5). Further still, DOR has the responsibility to publish "written bulletins, instructions, current revenue laws, rules, court decisions, and interpretive rulings of the department of revenue," making all of these items available to the public. RCW 82.32A.050(3).

¶21 DOR argues it must adopt interpretive rules to fully implement these mandates. But the statutes do not say the interpretive policies must be rules as opposed to statements. These statutes do not expressly grant the authority to adopt interpretive rules, and it cannot even be implied since other ways of fulfilling the statutes are available, such as interpretive statements.

■ ¶22 Second, DOR cites RCW 82.01.060(2), which says:

The director of revenue . . . shall:

. . . .

(2) Make, adopt and publish such rules as he or she may deem necessary or desirable to carry out the powers and duties imposed upon him or her or the department by the legislature: PROVIDED, That the director may not adopt rules after July 23, 1995, that are based solely on a section of law stating a statute's intent or purpose, on the enabling provisions of the statute establishing the agency, or on any combination of such provisions, for statutory authority to adopt any rule . . . .

RCW 82.01.060(2). AWB and DOR agree this is a very broad grant of rule making authority. However, AWB contends the regulatory reform act of 1995, which added the proviso, effectively revoked DOR's rule making authority under this

statute.[14] While it is true the proviso limits DOR's authority, it does not eliminate that authority. The proviso forbids rules based *solely* on the intent sections of statutes, "enabling provisions of statutes establishing the agency, or any combination of such provisions." RCW 82.01.060(2). Any interpretive rule is based on the statute it is interpreting and the statutory mandate to administer and enforce that statute, not *solely* on a general grant of rule making authority. If there is no underlying statute, there is nothing to interpret. Further, the Court of Appeals correctly held the regulatory reform act of 1995 applies only to legislative rules. *See* LAWS OF 1995, ch. 403, §§ 1, 201. Hence, RCW 82.01.060(2), while part of the enabling legislation that established DOR, provides authority for DOR to make interpretive rules.[15]

## II. The Force and Effect of Interpretive Rules

¶23 In light of the foregoing, it is apparent that DOR has interpretive rule making authority. The Court of Appeals erred at this point since it concluded DOR has the *inherent* authority to issue interpretive rules. 121 Wn. App. at 772. Agencies have only express or implied authority, not inherent authority, and although the difference between inherent and implied authority may be mostly semantical, we prefer the latter as a more accurate statement of the law. *See Tuerk*, 123 Wn.2d at 124-25 ("Administrative agencies have those powers expressly granted to them and

---

[14] AWB also claims the same act revokes any rule making authority under RCW 82.32.300 because that statute is part of the enabling legislation that established DOR. This argument is wrong. RCW 82.32.300 was originally enacted in 1935 to grant rule making authority to the tax commission (precursor of DOR). LAWS OF 1935, ch. 180, § 208. The tax commission was founded in 1927, and DOR was founded in 1967. *See* LAWS OF 1927, ch. 280; LAWS OF 1967, Ex. Sess., ch. 26. RCW 82.32.300 was not part of the enabling legislation establishing either agency and so is unaffected by the proviso added to RCW 82.01.060(2) or by RCW 34.05.322, which applies the same proviso to rules based on statutes enacted after July 23, 1995. None of the statutes underlying the WACs at issue here were enacted after that date, making RCW 34.05.322 inapplicable.

[15] DOR also argues from legislative history that AWB's interpretation is false. The argument from the statutory language alleviates the need for this analysis. *See Greenen*, 126 Wn. App. at 839.

those necessarily implied from their statutory delegation of authority.").

¶24 The trial court's conclusions 4, 5, and 6, are more interesting. *See supra* at 436. There the court concluded DOR does not have the authority to adopt interpretive rules *that do not say* they are interpretive. The court did not opine on interpretive rules that are so labeled but did conclude DOR does not have the authority to mislead the public by representing interpretive rules as binding. These conclusions raise the question of the nature of interpretive rules and their force and effect on the public.

¶25 DOR argues interpretive rules are valid rules of law. They derive their force, DOR asserts, not from themselves but from the statutes they interpret. Legislative rules, on the other hand, do have the force of law in themselves. DOR dismisses the nonbinding nature of interpretive rules as a false issue, one for academicians to dispute. The public must follow these rules because they reflect statutory law.

¶26 The above cited treatise is helpful at this point. It notes that courts treat interpretive and legislative rules differently:

> "In the case of an interpretative rule, the inquiry is not into validity but is into correctness or propriety. The legislative body has not delegated power to make a rule which will be binding upon the court if it is valid. The statute does not prevent the reviewing court from substituting its judgment on questions of desirability or wisdom. The law is embodied in the statute, and the court is free to interpret the statute as it sees fit."

BONFIELD, *supra*, at 281 (quoting 1 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 5.05, at 315 (1958)). Therein lies the true difference between interpretive and legislative rules: their effect on the courts.[16] Legislative rules bind the court if they are within the agency's delegated authority,

---

[16] At the federal level another difference is important: unlike Washington state agencies, federal agencies can adopt interpretive rules without using the notice-and-comment process. *See* 5 U.S.C. § 553(b).

are reasonable, and were adopted using the proper procedure. *See Weyerhaeuser Co. v. Dep't of Ecology*, 86 Wn.2d 310, 314-15, 545 P.2d 5 (1976). Interpretive rules, however, are not binding on the courts at all: "Reviewing courts are not required to give any deference whatsoever to the agencies' views on that subject [correctness and desirability of the agencies' interpretations]. Legislative rules therefore have greater finality than interpretive rules because courts are bound to give some deference to agency judgments embodied in the former, but they need not defer to agency judgments embodied in the latter." BONFIELD, *supra*, at 281-82. We have said as much.[17]

¶27 Technically, interpretive rules are not binding on the public. They serve merely as advance notice of the agency's position should a dispute arise and the matter result in litigation. The public cannot be penalized or sanctioned for breaking them. They are not binding on the courts and are afforded no deference other than the power of persuasion. Accuracy and logic are the only clout interpretive rules wield. If the public violates an interpretive rule that accurately reflects the underlying statute, the public may be sanctioned and punished, not by authority of the rule, but *by authority of the statute*. This is the nature of interpretive rules.

¶28 AWB applauds, and DOR contests, the trial court's conclusion that DOR has no authority to adopt interpretive rules that do not clearly state they are interpretive. DOR says no statute requires interpretive rules to be so labeled, nor does AWB cite any other authority. In the final analysis, it does not really matter how the rules are labeled. DOR will stick by its rules (whether interpretive, procedural, or legislative) unless and until they are stricken by a court. For interpretive rules in particular, DOR will

---

[17] *Edelman*, 152 Wn.2d at 590 ("[W]e accord no deference to an agency's rule where no ambiguity exists. Courts retain the ultimate authority to interpret a statute."). When a statute is ambiguous (i.e., subject to more than one reasonable interpretation), the agency's adoption of one of the possible reasonable choices is entitled to some deference. *See Weyerhaeuser Co.*, 86 Wn.2d at 315. Even so, the agency's interpretation is not binding on the courts. *Id.*

maintain it interpreted the underlying statutes correctly, and any taxpayer who disagrees will have to persuade a court otherwise. For legislative rules, a taxpayer who thinks the agency went too far in implementing the authorizing statutes will pursue precisely the same course: a lawsuit. Agency rules are de facto authoritative for the public until the public challenges them in court and the court agrees. Thus, how the rules are labeled does not affect the public's response to the rules.[18]

¶29 This argument answers AWB's claim the public was misled by DOR's representations of the rules as having the force and effect of law. If there is no requirement that interpretive rules be clearly labeled, they represent the agency's interpretation of the statutory law and coerce public behavior unless a taxpayer convinces the court a different interpretation is more accurate. Accurate interpretive rules reflect statutory authority and thus have a legal effect on the public. In some sense, whether DOR misrepresented the force and effect of interpretive rules is a question of word games, as is the trial court's related finding of prejudice.[19]

¶30 There is also some confusion over whether interpretive rules can be "rules" as defined by the Administrative Procedure Act. The definition of a "rule" in RCW 34-.05.010(16) is an agency regulation of general applicability (1) the violation of which results in a penalty, (2) which establishes or alters the procedures for hearings, (3) which establishes or alters the enjoyment of benefits or privileges

---

[18] Additionally, the public will know DOR's view of a proposed interpretive rule. RCW 34.05.328(5)(d) requires the agency to state in the notice of proposed rule making if the rule is a significant legislative rule with its concomitant procedures. Here for two of the WACs DOR noted RCW 34.05.328 did not apply because the rules were interpretive. *See* Admin. R. at 35 (DOR's official rule making files for WAC 458-20-136 and WAC 458-20-13601). DOR did not need to meet this criterion for WAC 458-20-238 because it filed the notice for proposed rule making before RCW 34.05.328 became effective on July 23, 1995.

[19] As the Court of Appeals noted, it would be improper to invalidate the WACs because of department misrepresentations about their force and effect. RCW 34-.05.570(2)(c) allows a court to strike down a rule only for specific reasons, none of which is an agency's alleged misrepresentations about the rule. *See supra*, at 437.

conferred by law, (4) establishes or alters licenses, and (5) effects manufacturing standards.[20] The Court of Appeals pigeonholed interpretive rules in category (3). 121 Wn. App. at 773. This conclusion is wrong since interpretive rules are nonbinding and cannot establish, amend, or revoke anything. Thus, interpretive rules don't seem to fit the definition of "rule."

¶31 However, the legislature probably intended agencies to adopt interpretive rules but failed to change the definition of rule. RCW 34.05.230, which encourages agencies to turn interpretive statements into rules, was adopted in its current form in 2001, *see* Laws of 2001, ch. 25, § 1, whereas the definition of rule was adopted in 1988, *see* Laws of 1988, ch. 288, § 101 (codified at RCW 34.05.010(16)). The later statute governs when the two conflict. *Bailey v. Allstate Ins. Co.*, 73 Wn. App. 442, 446, 869 P.2d 1110 (1994) ("Another general rule of statutory construction gives preference to the later-adopted statute and to the more specific statute if two statutes appear to conflict."). In light of this history, interpretive rules are proper. *See also* RCW 34-.05.328(5)(c)(ii) (defining interpretive rules) (adopted in 1995).

---

[20] RCW 34.05.010(16) reads as follows:

(16) "Rule" means any agency order, directive, or regulation of general applicability (a) the violation of which subjects a person to a penalty or administrative sanction; (b) which establishes, alters, or revokes any procedure, practice, or requirement relating to agency hearings; (c) which establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law; (d) which establishes, alters, or revokes any qualifications or standards for the issuance, suspension, or revocation of licenses to pursue any commercial activity, trade, or profession; or (e) which establishes, alters, or revokes any mandatory standards for any product or material which must be met before distribution or sale. The term includes the amendment or repeal of a prior rule, but does not include (i) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public, (ii) declaratory rulings issued pursuant to RCW 34.05.240, (iii) traffic restrictions for motor vehicles, bicyclists, and pedestrians established by the secretary of transportation or his designee where notice of such restrictions is given by official traffic control devices, or (iv) rules of institutions of higher education involving standards of admission, academic advancement, academic credit, graduation and the granting of degrees, employment relationships, or fiscal processes.

¶32 Finally, AWB argues the constitutional right of due process is implicated by DOR's misrepresentations. However, AWB does not elaborate on this argument, making it an insufficient basis for invalidating the rules. *See In re Disciplinary Proceeding Against Schafer*, 149 Wn.2d 148, 168, 66 P.3d 1036 (2003) (" '[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' " (internal quotation marks omitted) (alteration in original) (quoting *State v. Blilie*, 132 Wn.2d 484, 493 n.2, 939 P.2d 691 (1997))).

## CONCLUSION

¶33 The three interpretive WACs at issue are properly within DOR's rule making authority. We therefore affirm the Court of Appeals as modified by the above reasoning.

C. JOHNSON, MADSEN, BRIDGE, and OWENS, JJ., and BECKER, J. Pro Tem., concur.

¶34 ALEXANDER, C.J. (concurring) — I agree with the majority's conclusion that the Department of Revenue has the authority to issue interpretative rules. I write separately simply to express my view that an agency's interpretative rules should be clearly differentiated from its legislative rules.

¶35 As the majority observes, an agency's interpretation of a statute, whether or not codified as an interpretive rule, is not authoritative. Majority at 446-47. Courts are not bound by an agency's interpretive rules. *Id.* Legislative rules, on the other hand, if properly promulgated, are binding on the courts. *Id.* (citing *Weyerhaeuser Co. v. Dep't of Ecology*, 86 Wn.2d 310, 314-15, 545 P.2d 5 (1976)). Thus, the legal effect of an interpretative rule is quite different from the legal effect of a legislative rule.

¶36 Where interpretive rules are formatted in the same manner and published alongside legislative rules, they are

indistinguishable. The failure to differentiate interpretive rules from substantive rules very likely misleads the reader, particularly those without training or experience in the law, into believing that interpretative rules have the same legal effect as legislative rules. I believe, therefore, that the better practice for the Department of Revenue would be to label its interpretative rules as just that. While we cannot compel the department to do so, I urge it to consider taking such a positive and sensible step.

CHAMBERS and J.M. JOHNSON, JJ., concur with ALEXANDER, C.J.